The Supreme Court's decision in Taylor last term changed the way that we understand and apply the categorical approach. The decision made three specific changes to this court's precedent, two of which are relevant here because they invalidate the reasoning used in the Rice decision. The first change and the most important one here is that under Taylor, an empirical study of the conduct prosecuted in state cases is never relevant under the Fourth Clause. The reason for that is that the Fourth Clause cares what the elements of the offense are, not how an offense is normally committed or usually prosecuted. The second change is the realistic probability standard never applies when we're interpreting a federal offense. That change isn't relevant here. But the third change is and that is that for a state offense, a defendant is required to identify an example of a prosecuted case if and only if the defendant is arguing that the state does something unusual by prosecuting the offense in a special or non-generic way that goes beyond the elements as stated under state law. Under this framework from Taylor, the decision in Rice can no longer stand because Rice does exactly what Taylor forbids. In that case, the majority acknowledged after reviewing state law that an intent element was not expressly stated, and that's a quote from the opinion, not expressly stated under North Carolina law. To overcome that, the majority relied on a survey of the conduct that was described in a series of state cases that had been prosecuted under this statute. That methodology does not survive Taylor. It is simply no longer relevant. Now, I thought in Taylor, they basically said you should not take the fact that there isn't a decision. But if we actually have decisions that have construed it in a particular way, don't we rely on those? Your Honor, we don't have those in this case. I'm talking in principle now. I'm talking about what Taylor said. You went far beyond that and said we don't look at what the cases said. No, no, no. We certainly... Because in Rice, the decision had two parts to it. The first part was the decision as to what strangulation meant, and they went through the state cases where they actually defined it in various cases and applied it. Then the second part of the opinion was the court addressed the points being made by the defendant in that case and during that discussion used the analysis that was inappropriate currently. Now, of course, all the courts in the country have done appropriate because we've quoted that language for years. Absolutely. And I will say, I think this case is an outlier. Rice, that is, is an outlier in the sense that it's the only case in this court's jurisprudence that I'm aware of that relies on a survey in this manner to infer the existence of an element that isn't stated in North Carolina law. It tried to find out what strangulation meant. And so I encourage Judge Niemeyer of the court to go back and look at the Lanford decision, which was what you described as sort of part one or part A or whichever it was in the opinion. That is a decision purely about the actus reus. The discussion about assault by strangulation in that case is less than two pages. About a third of that is is block quotations from the trial court record because it's a sufficiency of the evidence challenge based on the actus reus question of whether covering someone's throat and hyperextending their neck qualifies as strangulation or whether instead the actus reus requires the direct application of force to the trachea. There's not a word in those two pages about intent. There's not a word in those two pages about culpable negligence or purpose or recklessness. That basically intent was inferred. It says Langford suggests that strangulation requires intentional or purposeful conduct hanging ligature and the manual assertion of pressure the forms of strangulation specifically discussed by their nature require intentional conduct. And so, judge, what those went on to explain which each one of those terms meant and said they cannot be done without intent. Now, that's a that's a legitimate analysis. So I think there are a couple of points I would make in response to that. The first is you quoted the key word there suggests the court. Well, I said found it. It's I think if the court believed that was the end of the inquiry, it would have said a verb like establishes or demonstrates. Instead, it treated Lanford's description of this conduct as one of the factors, one of the pieces of the evidence in a multi-factor inquiry. And so I think for that reason, it's not what we concluded. And we said Langford court considered as examples of strangulation show by their definitions that they could not be accomplished absent an intentional knowing or purposeful state of mind. And that's what we found legally from the definition of what strangulation is involving one person against another person, applying pressure, all the other things that they talked about. And so I think there again are a couple of problems here. One is that excuse me, Lanford simply doesn't address an intent element. What the court did in Rice is in discussing Lanford is what Taylor proscribes. It looks at the conduct that was described and asked the question is that was this intentional or could it be done recklessly? That's not the inquiry we undertake here. We undertake an inquiry is what has the state identified either in the statute or directly in precedent as the elements of the offense. The state in Lanford simply didn't do that. And the analysis under overlooks state law that we pointed out in the opening brief here. The Robinson case from 1986 North Carolina State uses describes an act of strangulation as resulting from culpable negligence that suggests that under North Carolina State law, it is a possibility that that could occur. And I would point the court to the federal assault statute just to the as a means of reference. If you look at 18 USC 113 B4, it defines strangling to include quote intentionally knowingly or recklessly impeding the normal breathing. This undercuts the suggestion that strangulation or strangling is the type of verb that can only be the result of intentional conduct and Judge King's dissent in Rice gets to this very point by highlighting examples from published case law of reckless conduct that did in fact result in strangulation. Those undermine the idea that the verb by itself implies necessarily an act as North Carolina courts haven't said it. There's no basis for this court to imply it given all of the contrary evidence. And I think Judge King's dissent is also important because it anticipated Taylor Judge King reasoned that this kind of survey that majority relied on is appropriate shouldn't be relied on when you take it out. The analysis in this case is incredibly straightforward. Just like Judge King's dissent lays out. You look at what the state has said is required. The only mens rea that the state has ever defined with respect to any of the three elements of this offense is the culpable negligence mens rea that arises under the assault element. That is all a state prosecutor anywhere in North Carolina is required to prove and under Taylor. That is both the beginning and the end of the inquiry. This should be a very simple case. Once the survey is removed. I would point just a couple of other things for what it's worth. The other pieces of evidence that the Rice Court relies on aren't adequate by themselves to uphold the outcome here. The jury instructions, for example, is something that the panel recognized was nondispositive, but counted it as additional evidence. However, as Judge King pointed out in dissent, the majority did not recognize, did not grapple with Judge Traxler's opinion in the Vinson case, which explains that when you look at the full scope of the jury instructions in North Carolina, they define intent as including culpably negligent acts. So that piece of evidence cannot on its own affirm the result here. The same thing would be true with the reference in the footnote to corpus linguistics. Again, that was not treated as dispositive. And again, if you look at things like the federal assault statute and the Robinson case from the state court, they also suggest that the verb by itself isn't sufficient to imply intent. Another point I wanted to make in its supplemental briefing, the government suggests that this supports the decision in Rice, and it points in particular, I think, most heavily to the red decision that Judge Wynn authored recently. I encourage the court to do exactly what it did, the red case, which is it recognized that the stated elements in Maryland included recklessness. And it then said it's no problem that the defendant failed to identify a case. We don't need an example of a prosecuted case in this scenario. That's exactly in line with what we are saying here. The, again, North Carolina elements. The only thing specifically stated is culpable negligence. That's broader than what is required under Borden. And therefore, no prosecuted case is required. I believe if the court doesn't have questions, that's all I have to say at the moment. All right. Thank you, Mr. Thank you, Your Honor. May it please the court. Anthony Enright for the United States. The district court properly followed this court's decision in Rice and held that assault accepting injury by strangulation under North Carolina law categorically qualifies crime of violence. Rice controls this case because there's really no tension between Rice and Taylor whatsoever. And if there were some tension, this court's precedent would continue to require it to follow Rice. There's no tension because Taylor endorsed what Rice did, which is look to how North Carolina state courts interpret North Carolina law on the subject. And it even endorsed looking at examples of real world prosecutions where the elements overlap. That's exactly what Rice did. It first determined its exact words. I got the case here. It said first thing it determined before looking at this 19 to zip survey that as the defendant, as my friend calls it, said a person cannot commit the act of strangling without knowing or intending it. And it got that by applying North Carolina's doctrine of ordinary meaning, conducting ordinary statutory interpretation principles. It wasn't dispositive, of course, that the court hadn't explicitly stated amens rea in terms like, you know, purpose or knowledge. The statute has amens rea and it comes from the word strangulation. Court looked, there's three separate elements. Strangulation element requires intent because you can't commit strangulation. One person cannot strangle another without knowing or intending it. And after doing that, it looked at other pieces of evidence and saw whether does it confirm or is it inconsistent with that? And one thing it looked at was, well, the statute's been around for 25 years and there's not a case that involves anything other than obviously purposeful or intentional conduct. And it looked at the other factors, the jury instructions, all of those things. Now, there's no tension because that's exactly what, that's exactly. Whether there have been other cases to deal with this issue or whether it could be No, the question is only whether it could. What would not, it's the question is not what do state prosecutors actually do, but what could they do? And Rice acknowledged that explicitly, said that's the standard. Oh, you knew that a listing of the cases that occurred is the universe of what a prosecutor could do. No, your honor. It's some evidence, the complete absence in the whole history of the statute of any examples of a prosecutor reaching for this unusual circumstance of an assault inflicting injury by strangulation accomplished recklessly is some evidence. For us, the use of surveying, I guess that would constitute a realistic probability test. It seems that Rice Court is using. Do you think that still, even on a tailor, is the manner in which we approach these cases? It's a factor this court can consider for non-dispositive purposes. In this court, that's not just control. I mean, if we're looking at it from a textualist perspective, let me make sure because I want to understand again, is the manner in which we look at cases and how we use certain terms. If the text, why is it not the text in a categorical approach that we view these and deal with it in that manner, as opposed to taking a survey of what could be done and what has not been done? Why is that not controlling? This court absolutely does use the text and I think it gives it. The text is dispositive when it speaks clearly. Well, here the text doesn't say the mens rea is recklessness or intent or purpose. So the court has to look somewhere and it looks at a canon of construction that the North Carolina courts use when the text doesn't give you an explicit answer. What would this term mean to an ordinary person? And then because it doesn't have the kind of clarity you might get if a statute specifies the mens rea and no uncertain terms, it says, well, let's make sure that we're right about this. And if we weren't right about this, one place we might see evidence of that is in real world prosecutions. One place we might see evidence of that is the jury instructions. One place we might see that is how the terms interact with other terms in the statute, and we're not seeing that here. So we can be confident and confidently say a person cannot strangle another person without knowing or intending it, which is a holding of this court, a ruling of this court that would bind this court, even if it ignored what my friend calls the survey evidence. When we take those conditions, do we then limit the prosecution of those kinds of cases? If we, you know, because this is for a sentencing purpose, but it doesn't have the substantive effect of saying, well, the court says you can't do it in that manner. Of course, this is a state statute, not a federal one. But it would seem to me it has some bearing on what one can be prosecuted and not that you don't. You got to have that higher level intent, and we'd now limit the manner in which these cases can be prosecuted. I think it would probably be persuasive to state courts, but state courts would, of course, have to make their own determination. The whole body of law, it's the Erie Doctrine on what happens if, you know, if we were to get a state Supreme Court decision holding, oh, no, this statute can be committed recklessly. I think the state court would be free to do that, even if this court disagreed. And then maybe that would be cause to revisit it. But the task for this court is really to predict how state courts would interpret this statute. And what the states have said about this statute in Lanford, for example, is the best evidence of that. They haven't given us anything more specific than that. I know my friend criticizes this court's interpretation of Lanford. I don't think that criticism is something this court can grapple with directly unless it first determines that it's not bound by Rice, because it's obligated to follow Rice, even if it disagrees with it, even if it would prefer, even if your honors agree with, for example, Judge King over the panel majority. It's not free to disregard the panel majority unless it finds that Rice constitutes superseding contrary law. Seems to indicate that use of the survey of cases was pretty influential, if not responsive. It was one of the key bases for it. Doesn't it appear to be that's what he's saying in that dissent? Not that his dissent controls by the means, but at least when we're trying to understand what is being said and right, you know, there's some limited language that Nehemiah has alluded to, but nonetheless, there's that focus there that this is what you're really looking at here, or there's a key element, survey. Do you maintain it's okay to just use the survey or that it's only being used in a very limited way? Well, we know it's only being used in a limited way because the court says so, your honor. It says on that principle, it cites Proctor, which I think is your honor's decision, holding that inability to cite a prosecuted case is by no means dispositive. And on that point, he's exactly right. This is Rice I'm reading. Would have ended the conversation, ended the discussion, and statutory determined construction business. And then without getting into this, absolutely could have, it absolutely could have. So you're saying that's sort of like dicta in the case? No, your honor. I think there's no, your honor, that that's the it is part of the court's rationale. I suppose you're being fair with the court because the court started out and made an interpretation of the statute. Yes, your honor. It made an interpretation of ordinary intelligence reading the statute. Yes, your honor. And it said no ordinary person would say that a person could strangle another without purposeful knowing or intentional state of mind. Absolutely, your honor. Then it focused on the element of inflict personal injury using the word inflict. So all of those were constructive. It did not survey cases. It was finding out what the statute meant. Then it said in part, subpart three, it says Rice makes several arguments against our conclusion. So up to that point, there was no survey. There was none of that language that Supreme Court used in Taylor that has now been discarded. It was then in responding to Rice's that the court then some of these some of these things in the manner that you're just pointing out, which I think may be reasons to discard part of that opinion. But the whole thing was based on a direct interpretation of the statute is based on Langford and based on dictionary definition and based on an ordinary reasonable person definition. And that's where it stopped. I absolutely agree with that, your honor. And if I if I suggested otherwise, I didn't mean to. I wasn't trying to be unfair to the court. I think this. It could be dicta, your honor. I necessary judge named. I just articulated the court went through this whole explanation, gave a solid basis for so holding and then it chose to go where it didn't need to go or not even relevant to go. Yes, your honor. I think it was that call. It went over and above what it needed to do. But what's that called? Isn't that called dicta? Well, the court can choose its level of generality for its analysis. It's arguably dicta. I normally wouldn't call this nonetheless there. But it's so much dicta that Judge King goes and dissent. He's one of the three members of the panel. That's the holding of that's the key part of the court is this whole survey business here. So I think the reason that I don't know that I I don't see Judge King is rejecting crisis arises argument. It says rice is hypothetical while theoretically possible has a minuscule chance of ever occurring and there is even a lower chance of being prosecuted for such conduct. Therefore, I says hypothetical does not rescue his argument. He goes through three arguments or two or three arguments of rice and does those types of things. Yes, your honor. To explain that rice is not persuasive, but that doesn't he does not say we are changing our holding that was a discussion after the court conducted this three-part analysis of looking to the dictionary definition. Look at the reasonableness and looking at Langford. I agree with that your honor. I think either whether whether you characterize the analysis of the actual cases reflecting examples of actual prosecutions as dicta or part of the holding of the court unequivocally ruled as part of its rationale. Yeah, frankly the dispositive part. Case would come up with that kind of argument. So you're saying in every case we will do our duty. We'll look at the statute and we'll make it determination and then we will slot in to this survey because we're going to say we're now answering a question on argument. And of course, this is all is as I said, you got a judge on the panel says no, that's not what you're doing. You are actually looking at this survey for is a key factor of it. And I mean all this kind of goes to the point that Taylor says that's not what you're supposed to do and they say it's not dispositive, but it can be a key part of it. You know, it had to be dispositive in and of itself, but it could be a situation where we're not going to get there. If it doesn't say this, what if you get these cases and they're going totally against what you just said the statute says. I mean, what if you get a there's a whole line of cases just like this that now come out the other way from what you say the statute is. How's that? That was the task for the court would be to predict what would the state's highest court do and that could be that would be tricky in that situation. I imagine you'd have to look at the recency of the cases or something like that. But ultimately, I don't think Taylor takes away completely a court's overlap and here at a minimum, the court found overlap before it talked about how cases are actually prosecuted. And that is something not only has Taylor endorsed that, but it's something this court has done in published opinions, in MAC, in is it read or read, since then. It has looked at statutory interpretation issues and in MAC's case it found well, they don't use a mens rea verbs, but the language suggests a mens rea of intent. The statute uses the word inflicts physical injury by strangulation. Yes, your honor. Inflicts personal injury by strangulation is guilty of a class. Yes, your honor. And this statute is like that and you can as you would as you have to with any of them because assault, inflict, strangulation, none of those have mens rea words in them. You have to pretty close. Yes, I agree, your honor, but it comes pretty close in in our favor and that's the court. The court found it close enough because looking at ordinary English, the principle, which is a principle from particularly that that's what that means. And yes, and that's exactly right, your honor. Even if there's direct conflict, even if the 19 to zip survey to use that phrase is a key part of this course rationale. And even if Taylor undermined it wholeheartedly, this court would remain bound by the portion of the rationale that Taylor didn't touch, which is this statement. A person cannot commit the act of strangling without knowing or intending it. That's just positive in this case. That's that's this court's precedent about how to deal with intervening Supreme Court precedent that aggregates part of rationale Taylor versus Scrubs, Dodge. Those cases say Middleton. You don't disregard the entire thing if there's conflict in one part of the rationale and that in this case is dispositive. I want to emphasize too that I really don't think the law of the circuit is nearly as fragile as it needs to be for this court to accept my friend's argument. If something like Taylor can undermine something like Rice where they kind of talk about the same thing in a complimentary way and can easily be read harmoniously, we'd have people treated differently on a routine basis because we're constantly getting new decisions on the categorical approach from the Supreme Court. And when they conflict, obviously this court has to deal with them. But when they don't, I think we'd have a situation where we're constantly second-guessing ourselves. It would be very difficult as advocates and judges, much more difficult than it is, and it would result in inconsistent treatment of different people. And I don't think that's helpful. Standing out on June the 9th, a few days later, Supreme Court comes down with Taylor. Yes, right. Categorical approach and it articulates some rather very direct law. A lot of folks that disagree with Taylor. Taylor's the law. Absolutely, Your Honor. The opinion is there. And I'm not so sure that the panel that was dealing with Rice didn't have the benefit of Taylor, the perspective of Taylor when it came out. So it is fair for us to take a good look. I mean, if you look at it, you want to say reasonable people, reasonable people would probably say a Hobbs Act, a robbery is a crime of violence. If you're going to do reasonable people with what ordinary folks think, that's probably true. I would. But when you look at it from a legal perspective, as we must do, and as the law has directed us on how to handle these cases, Taylor certainly gives us pause to take time. I'm not saying how we come out, but to say, you know, you can't look at these kind of that come out of a case like Taylor's United States Supreme Court case. Oh, Your Honor. I'm not, I'm not saying that at all. You have to look at that case. I'm not suggesting. We did have a chance to rehear it. And, but that's, I think we all agree. That's not a precedent in order that came in terms of whether we rehear Rice after Taylor or not. Right. I don't think the rehearing order is a precedent. Still, this is the opportunity in this panel to do a very strong look at it and see if there's a difference. It may or may not be a difference. And also, I think the judge at any balance point, if Rice is simply making a statutory basis and that's alone, in other words, the statutory interpretation alone stands, we can just cast aside this survey business here, which I think probably if it was been written down, there'd probably be a stronger line in there now that would say it, even though Judge Niemeyer alludes that it was said. So, but, but that's where we are. So, but, but I just only say that, said that to, to, to, so that we don't get too far afield that when we have a United States Supreme Court, this is a precedent, and we do, and that's what we're doing now. That's all we're doing, not making a decision one way or the other. Absolutely, Your Honor. I don't, I don't, I don't quarrel with the idea that the court shouldn't take a hard look at Taylor in any Supreme Court case that touches on the subject, but to hold that this court's precedent, that the Taylor significantly undermines the law of the circuit on this topic would be to say that this pulled at the, the, the law of the circuit is more fragile than I think it's held before. And I don't think it's necessary to do so in this case. And I think the answer is pretty clear in this case that Rice is controlling, at least on the issue of what's before this court, which is whether a specific case of assault by strangulation under North Carolina law qualifies as a crime of violence. So if this court has no further questions, I'm happy to yield the balance of my time to the court. Thank you. Your Honor, let me make a few points in rebuttal. The first, Judge Niemeyer, I don't expect this to necessarily change your view, but just to clarify a statement for everyone, you suggested that the survey discussion in Rice occurred only after the... It occurred in the introduction, but what it actually addressed, the statute, is what I was focusing on. Right. So yeah, the... It did three methods of addressing the statute. Sure. So yeah, there, and so my point there is before getting, before getting to the defendant's argument, there is a whole thing about a survey. And then it comes back up again, which I think is important because it shows that really the survey is the heartbeat of this case. It is what is driving the decision here. And so I think the fact that it comes up before, it comes up again... It's important to, in our discussion, both for you and me, and anybody else considering this, to recognize that there's a difference between a survey of cases and what's been prosecuted and what's not been prosecuted, and finding out how the state court interprets a statute. Sure. And so we can look at cases to see how the court interprets it. We don't look and see what they prosecute and what they don't. We look at the elements of the offense. Correct. And I think the term survey is maybe a shorter way of saying an empirical study. That is what the Supreme Court used. On the panel precedent rule, I do think it is important to, in my view, court simply is not bound by the rest of it because we have what I view this as reading like a three or maybe four-factor analysis, where the panel says, we've got these four factors we believe taken together, they result in this being a crime of violence. And now we know one of those factors, this empirical study, was invalid, shouldn't have been relied on. The panel simply never addressed the remaining question that is for this panel, which is, are the three remaining factors enough on their own without the empirical study to reach that same conclusion? That's a de novo review question. Nothing in the panel opinion suggests that, hey, we've seen these two factors, they are dispositive, but oh, by the way, we're going to talk about this third. It gets to the point whether the panel believed this was necessary. And I would highlight, this is something the panel conducted on its own, a survey of 19 cases. It also, in the Corpus Linguistic footnote, reviewed 294 hits in a Corpus Linguistics database. I don't think the court would have done that. If it viewed Lanford as resolving this issue, we're done. Everything else is unnecessary, but we're going to say it for whatever reason, for future guidance or whatnot. It's an awful lot of work for a panel to do on something that is decided elsewhere. Judge Wynn, I also want to go to your question about the could versus would, because I think it's precisely the right question in the way we think about this. And I was interested that my friend acknowledged that now under Taylor, the question is, could a prosecutor prosecute one of these cases, not would they? And I highlight that because if you look at page 586 of Rice, the Rice majority was thinking about this in a would framework. They say, we see no indication North Carolina would prosecute, not could. When you look at it through a could lens, under the elements laid out in the state statute in the state court, a prosecutor could bring a prosecution based on the fact patterns identified by Judge King. And I think when we... The difference between, you know, we do look to the state highest court to sort of predict how they would do something. But the Taylor case points to, and that's where we get, this is what I'm saying, I'm having some difficulty with the textualist aspect of this and sliding into these other things. It's sort of like legislative history, but it's cases, and cases typically are irrelevant on it. But when you do empirical search of the cases, you're sliding into something different than textualism in terms of here. And you get away from the could because the element, the question is, when we had a case in Virginia recently, I guess it dealt with something similar, there was no case to head on it. Probably most of us agree you would not ever prosecute on it, but the court didn't go there and says, well, you could. The Supreme Court came, Virginia came back with a certification. Yeah, you could see a prosecutor for this. We thought, there's not a way you could, but they would or could or whatever. I agree. The would and the could has that kind of haziness for me as to which what are the aspects we're looking at this on. And I think the thing I would beseech the court is that the categorical approach is complicated enough as it is. If we simply look at what has the state court, what has the state statute identified as the elements, that is a much simpler inquiry than all of these other things. Here we have the state court has said this assault, which is an element of this offense, requires only culpable negligence. That should answer this question without all this complicated stuff about the meaning of strangulation. And I would highlight how far it gets us from the text of the North Carolina statutes because there are dozens, I believe, but at least over 10 North Carolina assault offenses in the North Carolina code. A number of them specifically heightened the mens rea requirement with things like maliciousness, with phrases like intent to kill. The ones that don't have been interpreted by the state court to require only culpable negligence. That key decision, Jones, was on the books when the legislature passed this very provision in 2004. They were aware that was the default. They were aware if they wanted to heighten the mens rea requirement, there was a recognized way to do it. They had done it in their other assault statutes. This analysis gets us so far away from the state legislative text that it is, I think, unsustainable. And so for that reason, I would ask the court to conclude that this is not a crime of violence. Thank you. Thank you both. We'll come down. We'll adjourn court and then come down and greet counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Paul V. Niemeyer, James Andrew Wynn, William B. Traxler Jr.